CASE NUMBER 19-3690 G. RALPH ELLIOTT V FIRST FED COMMUNITY BANK OF BUCIARIZ-FURL ARGUMENT NOT TO EXCEED 15 MINUTES PER SIDE MR. MICHAEL FOR THE APPELLANT, WHEN READY Good morning. May it please the Court my name is Aaron Michael I have a soft voice can everybody hear me? Let's hear you. Great. I'm not gonna work myself to this. I'm from the Union County of Ohio Barb and this is my first appearance. We have in this case a case of first impression involving the Frank Dodd Act specifically the provision dealing with a newly created way of trying to keep lenders from getting themselves and their borrowers into trouble. I want to ask you something and I want to ask your adversary this as well because as best I can tell from Bruce this question is not answered. I think the sort of preliminary question in this case is we know what the statute says then we've got all these regulations and we've got this appendix key. Now what are the regulations compliance with those mandatory because they're much more detailed than the statute itself or are they just a way of giving guidance to lenders about how the requirements of the statute might be met in a given case? Well the statute does refer to the regulations but it doesn't answer the question I just asked. I think the presumption of the parties going forward has been that they are subject to the regulations and that those regulations define what the requirements of the statute are. Well I think the district court bonded to that assumption as well because he referred to the statutory requirement and he referred to appendix Q and what he said but he dealt with that on the merits rather than dealing with the question of whether that was just a bunch more stuff that the lender had to do or whether that was guidance to the lender as to how it might best achieve compliance. It's my understanding from talking to the people in this case that it is something that the lenders consider bonding and that they are seeking to get changes to and separately from the regulations specifically appendix Q. Appendix Q doesn't make any sense at all to me. Appendix Q is a vehicle to determine whether something is a covered transaction. If it's a covered transaction then there's a presumption that you comply. If it's not there isn't a presumption. So where do you drive a cause of action out of appendix Q? As far as I can see the bank is not contending that this is a covered transaction under appendix Q. There's been some confusion about the statutory scheme and I think they're just now starting to talk about it perhaps because of this case. But I think that there might be two parts to your question. As far as whether it's covered the statute has some paragraph B that gives what they call a safe harbor to the lender for qualified mortgages. If it's a qualified mortgage then subsection B says that we presume that it's a rebuttal presumption but we presume that it's in satisfaction of the requirements of subsection A which sets forth these requirements. And I think that's part of your question. My question is pretty simple. The application Q says that addresses the question of whether something is a qualified mortgage. If it's a qualified mortgage there's a presumption. The bank isn't arguing it's a qualified mortgage as far as I can see. So it's a simple question. Why do we even take appendix Q into account? Let's see if you'll comply. Appendix Q applies to all loans. If the lender followed the requirements of subsection B of the statute then we presume that it complied with A and the regulations that fall into place under A. So it gives them a safe harbor so that a borrower can't come in and start quibbling about the application of Q, Your Honor. What are you implying? Are you saying that appendix Q applies to mortgages that do not qualify as qualifying mortgages? Yes, Your Honor. And where does that come from? There's no exclusion of mortgages. You look at paragraph 1 of subsection A. Is there something in appendix Q that tells you that? Is there something in appendix Q other than describing what a qualified mortgage is? What in appendix Q tells you whether it applies to all mortgages? This is a new question and I'll do the best I can in trying to answer it without going back through the documents. But appendix Q is seen as the underwriting standards required under the regulation 12 CFR 1026.43. This is not that hard. It's not a question of what you think something is seen by or whatever. Where does it say in appendix Q that it gives you a cause of action and that it's used for anything other than determining whether something is a qualified mortgage? Where does it say it in appendix Q? It doesn't say it in appendix Q. So then where do you drive this idea that it does? You start with the statute, Your Honor. So start with the statute? So where does the statute help you as to appendix Q? As Judge Gibbons pointed out, it starts with the preface that it's subject to the regulations that are promulgated in accordance with the regulations prescribed by the Bureau. Then it gets into what I refer to as the prohibition that the lender may not enter into a transaction unless it verifies the documents, the information it relies upon to make the determination. But we're wasting a lot of time here. What's the difference between a regulation in which we know what that is and the appendix? It's a part of the regulatory scheme. When we say regulation... You're saying it's the same as a regulation. It's appendix to the regulation, Your Honor. But aren't there other regulatory requirements for verifying ability to repay? It's not all found in appendix Q, is it? It's a very concise and, in my opinion, well-written statement of the requirements for unready home loans. And, yes, it applies to home loans purely. To anything... I'm asking you, maybe you're not understanding my question or I'm not being clear, but your case doesn't depend on the applicability of appendix Q, does it? Aren't there other places in the regulations that impose a duty to verify income and things like that? Well, the statute does in paragraphs 1 and 4. I talked about paragraph 1. Paragraph 4 states that the lender shall verify the income that they're relying upon to make a determination. So you've got two places. The statute is not nearly as specific, though, about all these requirements of third-party verification. So it makes a difference here in terms of whether the statute has actually been violated. Judge Martley found it had not been, based on its language. If you look at paragraph 4, it does talk about the types of documentation that are required for third-party documentation. Paragraph 4 of what? 1639C subsection A, paragraph 4, where it says that lenders shall verify. It goes on to identify specific types of verification. These are verifications not just as to authenticity of the documents, but also... It's just third-party documents, right? That's right. So you're not... I'm going to ask you the same question. Did your case depend upon the applicability of Appendix Q? Yes. Okay. So we got that out of the way. Now, let's assume for a second that asking these questions that they asked, which seemed to be reasonable, getting answers, which seemed to be reasonable, and then relying upon them seemed to be reasonable. Let's assume that that all is the technical violation of truth in lending because those answers weren't verified. Let's just assume that. What's sort of mystifying about this case is that assuming you win, you are then eligible for either actual damages, normal statutory damages, or extra statutory damages. So what are you seeking in this case? The transaction was illegal. It should not have been entered into. What are you seeking by way of damages? Actual damages, normal statutory, or extra statutory? We've asked for actual damages as well as... What were your actual damages? The liabilities under the loan yard. This loan would have had the supporting spouse liable for the loan as opposed to the dependent spouse. So the direct damages from entering into this illegal loan was releasing the person who could and did have reasonable ability to repay it from the loan. How can you show actual damages when the bank relied upon what your client said? The vast majority of which turned out to be true but wasn't documentable until a couple months later. So how can you show you were actually damaged by that? That scheme was not adopted by Congress. Congress put the burden on the lender to do certain things to avoid... But you had to prove that you were not entitled to actual damages, which is what I understand. You had to prove that you were entitled to actual damages. Well, we have to establish damages whether they be actual or statutory as far as coming up with the correct numbers. Well, actual damages would be something caused by something the bank did, not caused by something your client did, correct? And it's a decision of the bank. And there seemed to be this reluctance to hold the bank account to look at the bank's actions and see how that resulted in... We're not reluctant to do anything. We're just trying to figure out whether the judge was in error. So your actual damages, you say, your client should not have had to pay anything? And you made principal and interest payments for two years and you should get them back? Is that what you're saying? Yes, Your Honor. I mean, at best, he should be put back in the position he was, which was no refinancing, I would think. Yeah, if they could go back and put the supporting spouse back on the old mortgage, then that would be putting everybody back where they were. But that's not possible, so... Let me just say, I think your actual damage claim here is entirely fanciful, but maybe you've got some sort of theory here. So you would be entitled probably to statutory damages. So statutory damages say you get between $400,000 and $4,000, or an amount equal to twice the finance charge associated with the refinancing. So what was the finance charge associated with the refinancing here? The definition of finance charge, and there's case law to support this, includes the finance charge not just paid, but under the contract, under the loan. And so that $4,000 cap comes into play. So are you telling us that under your normal statutory damages, the maximum you could get is $4,000, regardless of what finance charges he paid over the two-year period when he was making payments? No, there's a second statutory damages provision, so you'd add $4,000 to what he's already paid in terms of finance charges. It's disjunctive, it's not conjunctive, you have to read the statute. So are you claiming that he gets twice the finance charges associated with the refinancing? Yes, he gets... Okay, so what is that? Do you take the finance charge every month on the mortgage and multiply it times the months he paid until he stopped paying? Right, we've added up the finance charges he's paid under the loan, and that's a certain amount that's in the brief. But from the time he started paying until the time he finished paying? Until, the actual payments, Your Honor, that provision of the statutory damages provides for the actual payments of finance charges. There's two statutory damages provisions. One is just those that are paid, and there's one for those that are related to the transaction, whether they've been paid or not paid. So you're saying you take the finance charges that would be paid throughout the life of the mortgage that he asked for, and then he gets those back, whether he paid them or not? Is that your claim? For statutory damages? Is that your claim? No. Is it yes or a no? No, Your Honor. Okay. The question sounds – the $4,000 cap applies to looking at the finance charges under the term of the loan, which in this case is a couple hundred thousand dollars. And so that's why it's capped at $4,000. All right. Thank you. Thank you. Thank you. May it please the Court, I am Michael Coleman. I represent First Federal Community Bank of Bucyrus. We are urging that this Court affirm the decision of Judge Martley dismissing the plaintiff's claims and entering a decree of foreclosure. Is this a qualifying mortgage? I have difficulty with that term in that I've looked at the regulation as well, or rather the appendix, and I could find nothing in there that said whether or not it's more or less a guideline or whether or not it is an actual regulation. So I'm having trouble answering your question as well. I'm sorry. There are certain criteria that makes – are you claiming that this is a qualifying mortgage and therefore you get the presumption? Well, my understanding from reading it is that if you have followed the guidelines of that appendix, that it is a qualifying loan. And do you claim you followed those guidelines? Yes, we do claim that. So you're asserting that it is a qualifying mortgage? Yes. Okay. If I'm understanding the way it works properly, Your Honor. Did you verify – what did you verify? We verified all of the income that was listed along the application. You didn't have – okay, what did you get before you gave the loan? What we had was we had a previous refinance. We had a refinancing in 2013, and in connection with that refinancing, we had tax returns from 2012 and 2013. So when we look at the new loan in 2014, and there's a difference, too, between them. In 2013 – and I'm not trying to avoid your question. I'm just trying to get to it. In 2013, they were applying as joint borrowers. In 2014 now, they're applying – just Mr. Elliott is applying on the farm property. So he listed on his application, I think it was $528 a month in income. On the tax returns up to that time, all of the income was listed as joint. So the parties made a determination, as best they could, as to what amount of that income was going to be attributable to Mr. Elliott. And that was verified using the tax returns. The tax returns couldn't tell you exactly how it split out, but it made sense to the bank what the parties were telling them. Are you saying that when you were determining his income for purposes of these ratios, because you're claiming this is a qualified mortgage, that you didn't take into account the rental income and the marital separation agreement income? Oh, no. We took all of that into account. Okay. So if you took the marital separation income into account, you couldn't verify that by virtue of the tax return because it didn't exist at that point. No, we couldn't. So you had to – you asked him, are you going to get this income? He said yes. You checked with the wife. She said yes. Now, the separation agreement didn't exist at that point. It didn't exist for two more months, right? That's correct. So how do you never explain in your pleadings how you believe? I met with Ms. Golan who reassured them that she was absolutely committed to having Ralph stay in this house, that they were going to enter into this binding separation agreement. The separation agreement unquestionably was entered into shortly after the loan was closed. So the creditor, in this case the bank, did qualify with the appendix as far as verifying that separation agreement. So you didn't have to have the separation agreement? That's correct. Because it fell what you believed to be within the less than 12 months language. That's correct. And you did what was necessary to verify that. That's correct. And in fact, we did verify it. The separation agreement was entered into and they performed under the agreement until Mr. Elliott decided to breach the agreement. It's one of the ironies of the case that this income unquestionably existed. He also listed Social Security income on the application. That was verified by looking at his Social Security documents and the bank was permitted to gross that up because it's not taxed. What about the rent? Okay, as far as the rental income was concerned, the loan officer testified that he verified the loan income by looking at the previous tax returns. Now, both of those tax returns showed that there had been rental income in the past and that's what he looked at. Also, the evidence is uncontradicted that there was a $1,000 a month lease that Mr. Elliott had, which he had just entered into in 2014. But you didn't have that? The bank did not have that lease. And also, that's not the amount he was claiming, right? It's slightly less than what he claimed on the application. I think the lease agreement was $1,000 and he listed, I believe, $1,400 on the application. So, at least to the lease, you don't have one of these, well, it's less than 12 months and you can go talk to somebody. You didn't talk to the tenant? No, the bank did not. And the amount was wrong and you didn't have the lease? No, we did not have the lease. So, how then, at least as to the rental income, did you not at least technically violate the truth of lending? Well, because they verified it using the past tax return, Your Honor. What did that tell you? And they showed – what's in the record is that – That the bank was relying upon it? No, that Elliot was relying on it. Well, it's unclear, excuse me, exactly what he was relying upon. But that's the burden before you give the loan. You find out – you can't just say, I have $1,400 of rent. You have to verify where that's coming from and that it exists. I understand. And what we have in this record, Your Honor, is that the loan officer went to the previous tax returns, saw that there was rental income listed on those tax returns. But that was an aggregate of rental income for the couple, right? I believe it was, Your Honor. There's no testimony in this record as to exactly what he saw and what he relied upon. What he was asked was – But you're supposed to have a record of that. You're supposed to verify each loan according to these guidelines and have a file that says this is how we verified this piece of income. This is how we verified that piece of income. I mean, it's not – I understand. And what I can tell you, Your Honor, is what is in the record and what they did in this case. And they did make an effort to verify the rental income. And, in fact, the rental income substantially existed. Does it make any difference whatever under the Treatment of Lending Act that the bank decided to hold this loan, this kind of portfolio, and do not try to sell it to anybody else? That's the fact, isn't it? Do you see that against the respect of the Treatment of Lending Act? That was just – yes, that is something that this bank was doing partly because of the size of the property. It was – they said it was 26 acres. They said that loans for properties over 10 acres are very difficult to underwrite because there's no comparables. It's very hard to find comparables, and that's why, in this case, that's one of the reasons why it was important. But it doesn't make any difference, I mean, in terms of the application itself? I don't believe there's any kind of a differentiation in the statute as to whether it's a portfolio loan or not. And you apparently do not contest that the regulations apply to you in the same way the statute does. Is that correct? I have found nothing that indicates the contrary, Your Honor. No, I haven't. And what do you contend? If there is a statutory violation, what do you contend the damages would be? Well, Mr. Elliott could not testify during his deposition to any actual damages. He specifically asked him that, and he indicated that he had no actual damages. So they're limited to the statutory damages. In this case, there were very few finance charges. Most of the finance charges related to interest – I'm sorry – related to the escrow monies like taxes and insurance. But they are entitled to the finance charges that he has paid. And that does include interest. Okay. And that would be roughly how much money? Curiosity, so nothing else? I just don't know off the top of my head what it would be. It's all in the paperwork there, so that's what it is. Have you all tried to settle this, guys? I'm sorry? Have you all tried to settle this case? Yes, we have, Your Honor. Has our mediation office been involved? The mediation office in the district court was involved. Not our mediation office. I just can't remember whether or not we did a telephone mediation in this case or not. I'm not sure. But we made substantial efforts below. We made several attempts to try to get this resolved. Can I take you back to this possible separation of payments here for a moment? Sure. If we assume that Appendix Q applies, even though on its face it doesn't seem to, but you claim it does. So you look at Almond, Shoutsport, and Maintenance, and there has to be a legal separation agreement. Was there a legal separation agreement at the time you made this determination? At the time of the mortgage? Yes. No. Now, if we assume that you could rely upon these parties to say that they were intending to separate on certain terms, which doesn't seem to be consistent with the regulations, but if we've seen that, then there is this 12-month language that you seem to be applying, that you seem to be claiming, right? Yeah. Now, what it says is the consumer, that is Mr. Elliott, the consumer can provide acceptable evidence that payments have been received during the last 12 months. Had there been any payments at all made at the time the mortgage was made? No, there had not been any yet. But it indicates here that the payers have still been paying. There's a note then that goes on to say payments less than 12 months may be acceptable. You're not claiming that there were no payments at all. No, what they documented was her ability and her willingness to make those payments that she indicated she was going to make. And where does that fit within either the statute, the regulation, or regulation Q? I understand what you're saying, why you did it. It might be logical. But where does it square with the requirements that due to the lending apply? I believe I've taken that right out of regulation Q. It doesn't say that in regulation Q. If periods of less than 12 months may be acceptable, provided the creditor can adequately document the payers' ability and willingness to make timely payments. That is footnoting the section that says the consumer can provide acceptable evidence that payments have been received during the last 12 months. Now, there were no payments received during the last 12 months at all. No. So then you go to the note and it says payments less than 12 months. That means payments less than 12 months will be acceptable. If there were no payments at all that were received, how could they be less than 12 months? How can you fit within the note? It's uncontradictory. There were no payments drawn or unpaid. My understanding from the footnote is that by documenting the payers' ability and willingness to make it. If you guys are going to go back and discuss settlement, which has been alluded to here, which makes a lot of sense, you guys don't seem to know what these regulations say. You don't seem to know whether Appendix Q even applies. You clearly have not complied with these from my perspective with some of these requirements on the face. It looks like there's strict liability here. What the plaintiff wants does not seem to comport with what the definitions of damages are. This case just makes no sense from either side in my personal opinion. Well, again, as I've indicated. I don't think that's probably something you need to respond to. It's an observation from one member of the panel. I don't know what the other two judges think. But think about it after you leave here because this stuff doesn't add up on either side of the podium. And although the question and the comment is directed to you, Mr. Coburn, I'm featuring to suppose that Judge McKee did it to apply equally to the plaintiff. He hasn't stood back up yet. All right. We'll just pick for himself. But yes. Thank you, Your Honor. Thank you. Thank you. Here I am, Your Honor. You guys both are assuming that appendix Q applies. But appendix Q only applies if the bank is seeking it to be a qualified mortgage. And they say they are, but there's no indication of that. And even if they are, and even if they're right, it just establishes a presumption. They're not claiming the presumption. So the presumption doesn't seem to matter in this case. So it's hard to figure out why appendix Q even applies. But assuming that it does, it seems like they didn't meet the requirements as to the requirements for the spouse's support or for the rental income. But that doesn't – it's inconceivable to me. That means that you get back – that you get paid all of the finance charges you would have paid for the whole life of the mortgage, was what I thought you were saying. That doesn't make any sense. So it seems like this case is not worth why you're even here. And that's why we don't understand why you're – who's being – I'm not asking who's being unreasonable. But it does not seem to make any sense why we're even hearing this case. Well, we have participated fully in mediation in the district court and in the Sixth Circuit, Your Honor. So you're saying our mediation office wasn't involved? Yes, Your Honor. Do you think it might make more sense now that you've heard our skepticism about both sides of this case to try again? We've made a lot of efforts to try again. That's pretty simple. Yes, you think it would make sense.  I'm worried about the mediation, Your Honor. Yes, that would be fine. You know, another part of this case is, you know, the bank did you a favor to you. I mean, and none of the things that they may technically be required to have had anything to do – I mean, in fact, as the separation of bridges was drafted and put into effect, it would all have worked fine. The client would have enjoyed nothing but a benefit, except that apparently there was some falling out that resulted – there may be a dispute about who breached, but in any event, the bank didn't cause anybody to breach. And so we're talking probably about a period. I think about a month, probably. If the bank had stuck to its original decision – and I'm addressing the first part of your statement now, which I think is the important part of the statement. I'm sorry if you're – Their decision to not make the loan kept the supporting spouse on the hook for the full amount. And when they changed their mind because of their talk with the supporting spouse, who was their source of referrals, and let her on the hook, that put her in a much more powerful position over the dependent spouse going forward. And it freed her from the bank putting pressure on her to continue supporting the dependent spouse. Did you or your client and the supporting spouse have a legal dispute over who breached the separation agreement? Yes, you did, because you then ended up going through divorce proceedings. Yes, Your Honor. And was one of the issues with that, in the divorce proceedings, who breached the agreement? It was a question of whether or not the amount was sufficient for him to stay in the home. The amount in the agreement was insufficient for him to stay in the home. And they went back to try and change it, and she took the stiff armor part because she wasn't on the hook for the loan. She could do that because it wasn't her credit at risk on that loan because she wasn't on it anymore. So she had the superior negotiating position because the bank went along with her, because she was a referral of business to them. Let me just suggest to you that that seems to only remotely be possible to be taken into account for actual damages. But those actual damages, you can't, I don't think you can show causation here. Because the fact that this all went south was because your client breached the separation agreement. That's what happened here. So I don't think you can get actual damages. Under the statute, it's not a question of his breaching. It's a question of the bank engaging in an illegal transaction. And what happened because of that, what happened is that he was stuck with a debt he couldn't afford, and the woman who could afford to pay for it was released from that debt. But whoever agreed, it was a disagreement between your client and now this ex-wife that caused the situation that occurred. It wasn't in the bank. While it may not have technically been the bank, it didn't make an unsound loan in the bank. And really, the end result of a loan would have been unassidable except for the technical requirements of the statute. I know your Honor is just kind of exploring things in this case, and I think the lending community is obviously very concerned about whether they're going to be held liable under the statute. They haven't yet in 10 years. And if they can go into divorce proceedings, that's good news for the lenders, because you're always going to find something that somebody did that they shouldn't have done, or they didn't do that they were supposed to do. It shouldn't just be a question of whether the lender did what it was supposed to do, or did something it wasn't supposed to do. I think that's the only issues here that should be addressed by the court. We appreciate both of the presentations that both of you have made. I know we've had a lot to say about the case. We found it difficult, and we certainly consider everything you all have said to us. And we may also talk to the mediation office about whether it agrees with your representation that you've got or your suggestion that you've gone as far with it as you can. Thank you. In that, the remaining cases, I believe, are not being argued in this court.